In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-1291 & 01-1292

United States of America,

Plaintiff-Appellee,

v.

Lawrence Scialabba and Robert T. Cechini,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 296--Ruben Castillo, Judge.

Argued January 15, 2002--Decided February 28, 2002


   Before Flaum, Chief Judge, and Coffey and
Easterbrook, Circuit Judges.

   Easterbrook, Circuit Judge.  A financial
transaction involving the "proceeds" of
crime, and designed to promote the
carrying on of certain offenses, is
unlawful money laundering. 18 U.S.C.
sec.1956(a)(1). Neither the Supreme Court
nor this circuit has defined the word
"proceeds", and there is no definition in
the statute itself. This case presents
the question whether "proceeds" refers to
the gross income from an offense, or only
the net income. We conclude that, at
least when the crime entails voluntary,
business-like operations, "proceeds" must
be net income; otherwise the predicate
crime merges into money laundering (for
no business can be carried on without
expenses) and the word "proceeds" loses
operational significance.

   The business in this case is gambling,
which is unlawful in Illinois unless
licensed by the state. OK Amusement, of
which Robert Cechini was sole proprietor,
provided video poker machines to bars,
taverns, and restaurants (collectively,
the retail outlets). Patrons dropped
coins into the machines and received
on-screen "credits" if they won. These
credits could be used lawfully to
continue playing, or unlawfully as the
basis of cash payouts. Many retail

outlets redeemed credits for cash. Later, when Cechini or Lawrence Scialabba, his assistant, opened the coin boxes, the contents would be split with the outlet's owner: some went to cover the payments made to customers, some was retained by the owner as compensation for his role in the business, and defendants kept the rest as compensation for the machines-- which OK Amusement not only supplied but also fixed (if they broke down) or replaced (if they were seized in raids by the police).

Cechini and Scialabba have been convicted of running an unlawful gambling business, see 18 U.S.C. sec.sec. 371, 1955; filing tax returns that failed to report their income from this business, see 26 U.S.C. sec.7206(1); and conspiring to defeat tax collection from the outlets' owners, see 18 U.S.C. sec.371. They do not appeal from any of these convictions. But they do appeal from the money laundering convictions, because under the version of the Sentencing Guidelines in force before November 1, 2001, the money laundering convictions substantially augmented their prison terms. Compare United States v. Buckowich, 243 F.3d 1081 (7th Cir. 2001), with Amendment 634, effective November 1, 2001. See also United States v. Perez, 249 F.3d 583 (7th Cir. 2001). Scialabba's base offense under the old version of U.S.S.G. sec.2S1.1 was 31, producing a sentencing range of 108-135 months (and a sentence of 108 months); with no money laundering counts the offense level would have been 21 and the range 37-46 months. Cechini's base offense level was 34, with a range of 235-293 months; he received a sentence of 188 months (the bottom of the range for level 32, after the district court made an error in addition); but without the money laundering convictions his offense level would have been 23 and the sentencing range 84-105 months.

According to the prosecutor, Cechini and Scialabba violated sec.1956(a)(1) when they handed some of the money in the coin boxes over to the outlets' owners and used more of that revenue to meet the expenses of the business (such as leasing the video poker machines and obtaining amusement licenses for them from the state). This is equivalent to saying that every drug dealer commits money laundering by using the receipts from sales to purchase more stock in trade,

that a bank robber commits money laundering by using part of the loot from one heist to rent a getaway car for the next, and so on. An embezzler who spent part of the take on food and rent, in order to stay alive to cook the books again, would be a money launderer too. Yet none of these transactions entails financial transactions to hide or invest profits in order to evade detection, the normal understanding of money laundering. Nor were Cechini or Scialabba charged with reinvestment in seemingly legitimate businesses or other means to whitewash (= "launder") the funds; the focus was entirely on the disposition of the gross income. Thus the money laundering convictions depend on the proposition that gross income is "proceeds" under the statute.

Here is the text of sec.1956(a)(1):

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--(A)(i) with the intent to promote the carrying on of specified unlawful activity; or (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or (B) knowing that the transaction is designed in whole or in part--(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

The prosecutor's argument is plain meaning: Divvying up income with tavern owners is a "financial transaction which involves the proceeds" (etc.). According to the United States, two opinions support its plain-meaning view: United States v. Conley, 37 F.3d 970 (3d Cir. 1994), and United States v. Mankarious, 151 F.3d 694, 706 (7th Cir. 1998). We do not read these cases so; and the meaning of this statute is not at all plain

because it lacks a definition of "proceeds" and the context does not reveal whether the reference is to gross receipts or net income.

Treating the word as a synonym for receipts could produce odd outcomes. Consider a slot machine in a properly licensed casino. Gamblers insert coins, and the machine itself returns some of them as winnings. Later the casino opens the machine and removes the remaining coins. What are the "proceeds" of this one-armed bandit: what's left in the cash box, or the total that entered through the coin slot? At oral argument the prosecutor sensibly replied that the "proceeds" do not exceed what's left after gamblers have received their jackpots; yet the only difference between the slot machine and the video poker machine is that the slot machine is automated and pays gamblers directly. Likewise, one would suppose, the "proceeds" of drug dealing are the profits of that activity (the sums available for investment outside drug markets), the net yield rather than the gross receipts that must be used to buy inventory and pay the wages of couriers. It would have been easy enough to write "receipts" in lieu of "proceeds" in sec.1956(a)(1); the Rule of Lenity counsels against transmuting the latter into the former and catching people by surprise in the process.

If Congress had levied a tax on the "proceeds" of a casino, most speakers of English would understand this as a tax on the profits of the business (what's left after paying suppliers and the winning gamblers) rather than on the amount wagered. It makes sense to read "proceeds" in sec.1956(a)(1) the same way. If instead the word "proceeds" is synonymous with gross income, then we would have to decide whether, as a matter of statutory construction (distinct from double jeopardy), it is appropriate to convict a person of multiple offenses when the transactions that violate one statute necessarily violate another. See, e.g., Heflin v. United States, 358 U.S. 415 (1959); Simpson v. United States, 435 U.S. 6 (1978); Busic v. United States, 446 U.S. 398 (1980). By reading sec.1956(a)(1) to cover only transactions involving profits, we curtail the overlap and ensure that the statutes may be applied independently to sequential steps

in a criminal enterprise.

Mankarious offers the prosecutor no support. The defendants were charged with mail fraud and money laundering, among other things. They received money from the mail fraud before they used the mail, which served to disguise their preceding fraud. The defendants engaged in transactions with this money before the mailing and argued that these funds can not be "proceeds" from mail fraud until the mail fraud is complete. We held, to the contrary, that a fraudulent scheme involving mail (for the federal crime is the whole scheme) can generate "proceeds" before the mailings have been completed. That decision has nothing to do with the difference between gross and net income; the distinction played no role in Mankarious, which was about timing rather than the difference between "proceeds" and "receipts."

Conley is closer to the mark but does not hit it. The theory of prosecution in Conley was the same as the theory here: that using gross revenues of a gambling business to pay suppliers and employees violates sec.1956(a)(1). But the defense differed. Instead of arguing that there is a difference between revenues and proceeds, the defendants in Conley embraced the idea that receipts equal "proceeds" and used that as the fulcrum of a contention that prosecution for both gambling and money laundering violates the double jeopardy clause of the fifth amendment, because proof of gambling shows money laundering too. The third circuit rejected that variation on the "same transaction" approach to double jeopardy, remarking that the statutory elements of the offenses differ, and the Supreme Court has held that it is the elements of the crime rather than the underlying transactions that define an "offence" for purposes of the double jeopardy clause. See United States v. Dixon, 509 U.S. 688 (1993). Conley accepted the parties' shared assumption that "proceeds" means gross income. It did not consider, and thus did not resolve, the question before us today. Nor does our opinion in United States v. Jackson, 935 F.2d 832, 839-42 (7th Cir. 1991), resolve it. Some of the transactions said to be money laundering in that prosecution involved the purchases of business supplies, but other

transactions involved reinvestment of net profits; the court was not asked to, and did not, decide whether all gross receipts are "proceeds." We now hold that the word "proceeds" in sec.1956(a)(1) denotes net rather than gross income of an unlawful venture.

The money laundering convictions are vacated, and the matter is remanded to the district court for resentencing on the other convictions. This may affect the amount of forfeiture (previously set at about $3 million), so it would be pre mature to address the defendants' arguments that this sum was miscalculated.