

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2006

# USA v. Grasso

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4048

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Grasso" (2006). *2006 Decisions.* Paper 420.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/420

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-4048 and 05-4049

———

UNITED STATES OF AMERICA

v.

MICHAEL J. GRASSO, JR.
                                          Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. Nos. 00-cr-00051 and 01-cr-00783)
District Judge:  Hon. Stewart Dalzell

———

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2006

Before:  SLOVITER, McKEE and BARRY, Circuit Judges

(Filed September 25, 2006)

———

OPINION

SLOVITER, Circuit Judge.

Michael J. Grasso, Jr., appeals his judgments of conviction in the United States District Court for the Eastern District of Pennsylvania. Although he raises four issues, the most substantial claim is that the District Court erred by increasing his sentence in one of the cases following a remand. There is a somewhat complicated procedural background that must be reviewed to understand the issues before us.

**I.**

In February 2000, Grasso was indicted in Criminal No. 00-51 for mail fraud, wire fraud, and money laundering for selling fraudulent work-at-home schemes from 1997 through 1999. In November 2000, a superseding indictment was filed, which reduced the number of money laundering counts from 508 to 482, and which added a charge of obstruction of justice, based on Grasso's attempt to access funds frozen by the Government. In December 2001, Grasso was indicted in Criminal No. 01-783 which charged him with two counts of forgery and one count of obstruction of justice, based on his renewed attempt to gain access to frozen funds. The obstruction of justice charge also alleged that Grasso forged the signatures of both a district judge, the Honorable Jay Waldman, and a deputy clerk. On February 7, 2002, the District Court severed the obstruction of justice count (Count 13) in Criminal No. 00-51 and consolidated that count with Criminal No. 01-783.

After a two-week trial before the Honorable Bruce W. Kauffman, Grasso was

2

found guilty of all counts in the superseding indictment in No. 00-51, with the exception of two counts that were dismissed during the trial. Grasso thereafter pled guilty to two counts of forgery and one count of obstruction of justice in No. 01-783 and the severed obstruction of justice count in No. 00-51 before the Honorable Berle M. Schiller. The cases were eventually consolidated for sentencing before Judge Schiller. On the money laundering and fraud convictions, No. 00-51, Judge Schiller sentenced Grasso to 97 months' imprisonment, three years' supervised release, a fine of $150,000, restitution in the amount of $761,126.39, and a special assessment of $49,500. On the obstruction of justice count, Judge Schiller sentenced Grasso to 15 months' imprisonment, 10 months to run concurrently and 5 months to run consecutively with the sentence in No. 00-51, a fine of $30,000 and a $300 special assessment.

Grasso timely filed his appeal in No. 00-51 on February 13, 2003. He argued that in light of United States v. Scialabba, 282 F.3d 475 (7th Cir.), cert. denied, 537 U.S. 1071 (2002), he should be sentenced under the fraud, rather than the money laundering, guidelines. On appeal, this court upheld Grasso's convictions and sentences. United States v. Grasso, 381 F.3d 160 (3d Cir. 2004), vacated, 544 U.S. 945 (2005). However, we vacated the restitution order and remanded that portion of the case. Id. at 172. While Grasso's appeal was pending, he filed a letter pursuant to Fed. R. App. P. 28(j) raising a challenge to his sentence in light of the Supreme Court's recently issued decision in Blakely v. Washington, 542 U.S. 296 (2004). Approximately two weeks later, we issued

3

our decision without mentioning the Blakely issue.

Grasso then filed a petition for writ of certiorari challenging his convictions and sentences. Thereafter, the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220 (2005), on January 12, 2005. On March 28, 2005, the Court granted Grasso's petition for writ of certiorari, vacated the judgment, and remanded the case to this court for further consideration in light of Booker. Grasso v. United States, 544 U.S. 945 (2005). On remand, this court vacated Grasso's sentence and remanded the case to the District Court for resentencing.

On remand to the District Court, the case was reassigned from Judge Schiller, who recused due to a conflict, to the Honorable Stewart Dalzell. Judge Dalzell entered an amended order directing the parties to "[s]ubmit their views to the court as to the relevance, under the Supreme Court's Booker calculus, of defendant's October 6, 2002 letter to A. Richard Gerber, Esquire (which apparently had not been previously addressed in connection with the defendant's earlier sentencing)." App. at 448. The referenced October 6, 2002 letter was sent by Grasso to Gerber, an attorney, in an effort to get the latter to use his purported influence over Judge Kauffman to secure a sentence other than imprisonment. Appellee's Supp. App. at 4. Counsel for Grasso argued that Judge Schiller had been aware of the letter at the original sentencing held in early February 2003 because the letter itself was the reason that the case had been reassigned to him from Judge Kauffman. However, Judge Dalzell found the letter "extremely disquieting," App.

4

at 567, and used it as the basis for increasing Grasso's sentence in No. 01-783.

At resentencing, Judge Dalzell reimposed the 97-month sentence on the money laundering and fraud charges in No. 00-51, and the $49,500 assessment, but reduced the fine from $150,000 to $75,000. In No. 01-783, Judge Dalzell reimposed the $300 assessment, reduced the fine from $30,000 to $25,000, and increased Grasso's sentence from 15 months' imprisonment to 20 months' imprisonment, with 10 months, rather than the initial 5 months, to run consecutively to the 97-month sentence in No. 00-51. It is this increase that forms the basis of Grasso's first issue on appeal.

## II.

Grasso raises four issues on this appeal: (1) whether it was error for the District Court to increase his sentence at resentencing; (2) whether the District Court's sentence was unreasonable;[1] (3) whether the District Court improperly enhanced his money laundering sentence for obstruction of justice; and (4) whether for purposes of 18 U.S.C. § 1956(a)(1)(A)(i) "proceeds" should be defined as gross receipts or net profits.

---

[1] The Government argues that we do not have jurisdiction to review Grasso's sentence because it was imposed within the properly calculated guideline range. However, in United States v. Cooper, 437 F.3d 324, 328 (3d Cir. 2006), we held that we have jurisdiction to review sentences for reasonableness under 18 U.S.C. § 3742(a)(1) (authorizing the appeal of sentences in violation of law).

## A.

### 1.

Grasso first argues that the District Court's resentencing in No. 01-783 was improper because it was outside the scope of the mandate issued by this court on May 20, 2005. This contention is based largely on the fact that Grasso's Rule 28(j) letter, filed in response to our Order of April 20, 2005, did not refer to the obstruction charges in No. 01-783.[2] However, Grasso's argument misses the point.

Grasso filed notices of appeal in Nos. 00-51 and 01-783 on February 13, 2003, which were docketed in this court as Nos. 03-1441, 03-1442, respectively. Our opinion dated August 23, 2004 affirmed Grasso's convictions in both cases, but remanded the matter to the District Court for reconsideration of the restitution order only. However, Grasso petitioned for writ of certiorari on December 20, 2004 in both No. 00-51 and No. 01-783. The Supreme Court granted the petition, vacated the judgment, and remanded the consolidated case to this court. We then requested that Grasso inform us as to whether he wished to challenge his sentence under <u>Booker</u>; he replied that he wished to do so. We then remanded the case to the District Court. Because our Order remanding the consolidated case applied to both criminal action numbers, it was well within the

---

[2] However, in his letter, Grasso did state the name of the case as follows: "*United States of America v. Michael J. Grasso, Jr.,* <u>U.S. Ct. App. 3d Cir., Nos. 03-1441/03-1442 (Consolidated)</u>." No. 03-1442 is the appeal docket number for No. 01-783.

authority of the District Court to resentence Grasso in both cases.  Because Grasso filed

his appeal to this court and his petition in the Supreme Court in both No. 00-51 and No.

01-783, rather than only in No. 00-51, he has no basis to complain that he was

resentenced in No. 01-783.

## 2.

Grasso next argues that the District Court's resentencing in No. 01-783 violated

his constitutional rights to due process and freedom from double jeopardy.  Grasso argues

that his due process rights were violated because the District Court did not state a "wholly

logical" reason for the increased sentence.  Appellant's Br. at 17.  In North Carolina v.

Pearce, 395 U.S. 711 (1969), the Supreme Court held that due process "requires that

vindictiveness against a defendant for having successfully attacked his first conviction

must play no part in . . . [resentencing]."  Id. at 725.  In order to ensure that is the case, the

Court required that "whenever a judge imposes a more severe sentence upon a defendant

after a new trial, the reasons for his doing so must affirmatively appear."  Id. at 726.  We

have previously stated that "[t]his requirement has been read to create 'a presumption of

vindictiveness, which may be overcome only by objective information in the record

justifying the increased sentence."  Rock v. Zimmerman, 959 F.2d 1237, 1256 (3d Cir.

1992) (quoting United States v. Goodwin, 457 U.S. 368, 374 (1982)).  However, this

presumption does not apply in every case.  Id.  As we stated in Zimmerman, "the Pearce

presumption does not apply where the second sentence is imposed by a different

7

sentencer and the record provides affirmative assurance that the harsher sentence reflects simply a fresh look at the facts and an independent exercise of discretion." Id. at 1257. When the second sentencer "'provides an on-the-record, wholly logical, non-vindictive reason for the harsher sentence,' it is not necessary for him or her to invoke facts not available at the time of the first sentence." Id. at 1257-58 (citations omitted in the original); see Texas v. McCullough, 475 U.S. 134, 140 (1986). In the absence of the Pearce presumption, a party challenging a second sentence must demonstrate actual vindictiveness. See, e.g., Zimmerman, 959 F.2d at 1258.

The Pearce presumption does not apply in this case. The record demonstrates that Judge Dalzell took a fresh look at the facts and independently exercised his discretionary authority in sentencing Grasso to an additional five months of imprisonment in No. 01-783. Judge Dalzell explained that he found Grasso's attempt to pay Richard Gerber a bribe to influence a federal judge's disposition of his case "extremely disquieting." App. at 567. He stated that the letter compounded the attempts to corrode the sentencing before Judge Kauffman and "raises the question of incorrigibility . . . ." App. at 562. Vindictiveness is also negated by the fact that Judge Dalzell reduced Grasso's fines in both No. 00-51 and No. 01-783.[3] Grasso seeks to bolster his argument by noting that his letter to Gerber was available to Judge Schiller at his initial sentencing. Judge Dalzell

---

[3] We note that Grasso has not raised a claim of actual vindictiveness.

explained that he came to a different result than did Judge Schiller, stating that "I don't know whether [Judge Schiller] knew about [the letter] or not. All I can say for sure is that the October 6, 2002 correspondence was not alluded to in any way, shape or form in the transcript of the Sentencing Hearing." App. at 567-68. We also believe it irrelevant whether Judge Schiller was aware of Grasso's second attempt to improperly influence a federal judge. The dispositive fact is that Judge Dalzell looked at the case anew and independently exercised his sentencing authority. See, e.g., Zimmerman, 959 F.2d at 1258 (Second sentencer did not err by imposing consecutive, as opposed to the initial concurrent, life terms on defendant. The second judge "explained that the sentence disparity was attributable to the fact that he . . . was taking a fresh look at the relevant facts and exercising an independent judgment.").

**3.**

Grasso argues that "[d]ouble jeopardy and due process also invalidate [his] increased sentence for the . . . reason that [he] . . . had a legitimate expectation of finality with respect to it." Appellant's Br. at 19. Grasso cites to a decision of this court where we stated, "A defendant's due process rights may be violated 'when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized and it would be fundamentally unfair to defeat them.'" United States v. Davis, 112 F.3d 118, 123 (3d Cir. 1997) (quoting United States v. Lundien, 769 F.2d 981, 987 (4th Cir. 1985)). Grasso fails to quote the remainder of that

9

thought where we continued, "It is only in an extreme case that a later upward revision of a sentence is so unfair that it is inconsistent with the fundamental notions of fairness found in the due process clause." Id. In Davis, we looked to three factors to determine whether the defendant lacked a legitimate expectation of finality. The first was whether the defendant himself challenged the sentence. Id. at 123-24. Here, Grasso made the decision to appeal the sentence. The second factor was whether the defendant has completed his prison term. Id. at 124 ("Davis ha[d] no expectation of finality as his aggregate sentence [had] not been served[.]"). Here, Grasso had not completed his prison term; he had served 44 months at the time of his resentencing before Judge Dalzell. The third was whether the resentencing gives the defendant a lower overall sentence. Id. Here, although Grasso's overall sentence has increased by five months, we do not believe an increase in prison time of that magnitude constitutes the type of sentence that is "so unfair that it is inconsistent with the fundamental notions of fairness found in the due process clause." Id. at 123. We reject Grasso's constitutional challenge to his resentence.

**B.**

We turn to the second issue Grasso raises on appeal, whether the sentence was reasonable. Grasso argues that the District Court erred by refusing to take into account the disparity in Grasso's sentence and the sentences of two other defendants convicted and previously sentenced for similar conduct. Defense counsel urged the District Court to impose a sentence comparable to that imposed on the other two defendants. The District

10

Court declined, stating "[i]t seems to me we're comparing apples to oranges with those other cases . . . because those folks were not convicted of money laundering. . . . But that's what [Grasso was] [sic]."

The Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), is by now well-worn territory. For purposes of this opinion, it is sufficient to note that in Booker the Court held that the Sentencing Guidelines were henceforth to be treated as advisory, rather than mandatory; to do otherwise would violate the constitutional guarantee embedded in the Sixth Amendment. Id. As we stated in Cooper, "the Supreme Court directed appellate courts to review sentences for reasonableness . . . ." 437 F.3d at 326 (citing Booker, 543 U.S. at 308).

In determining whether a sentencing court acted reasonably we must look to whether the court considered the factors set forth in 18 U.S.C. § 3553(a). Id. at 329. A sentence within the correct guideline range is less likely to be found unreasonable; however, "a within-guidelines sentence is not necessarily reasonable per se. Otherwise, as several Courts of Appeals have concluded, we would come close to restoring the mandatory nature of the guidelines excised in Booker." Id. at 331. Lastly, the appellant has "the burden of demonstrating unreasonableness." Id. at 332.

On appeal, Grasso has failed to demonstrate that his sentence was unreasonable. The record demonstrates that the District Court considered the § 3553(a) factors,

11

specifically § 3553(a)(6),[4] the factor at issue here, and nevertheless decided to sentence

Grasso within the advisory sentencing guidelines range. First, as the Government stated

at the sentencing hearing:

> [T]he amount of loss with respect to [one of the individuals mentioned by defense counsel] was about one-and-a-half to two-and-a-half million dollars. . . . [With respect to] Grasso, we have taken the position that we're talking about essentially a 10 million dollar loss. That's the amount of money he secured from others through the course of this fraudulent scheme."[5]

App. at 552-53. Second, Grasso chose to go to trial, rather than plead guilty. Third, and

perhaps most importantly, Grasso was convicted under the money laundering guidelines –

the other two individuals were not. That alone accounts for the sentencing disparity. The

fact that the District Court failed to depart does not make the sentence unreasonable. In

fact, as we stated in Cooper, Booker did not overturn this circuit's practice of "declining

to review . . . a district court's decision to deny departure." 437 F.3d at 333. In sum,

Grasso's sentence was not unreasonable.

---

[4] 18 U.S.C. § 3553(a)(6) states, "The court, in determining the particular sentence imposed, shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"

[5] The Assistant United States Attorney present at the sentencing hearing only addressed one of the other matters raised by defense counsel. She stated, "I was involved in . . . the Frumin case . . . . The other matter I was not involved in." App. at 551.

12

**C.**

Grasso next argues that the District Court improperly enhanced his money laundering sentence for obstruction of justice. See U.S.S.G. § 3C1.1. He contends that applying the enhancement for obstruction of justice in No. 00-51 amounts to double counting because he was convicted for obstruction of justice in No. 01-783. However, the record makes clear that no double counting occurred. The obstructive conduct for which Grasso's sentence was enhanced in No. 00-51 was related to Grasso's attempt to access frozen funds in January 2000. Grasso wrote a letter on January 21, 2000 to a financial institution holding his frozen funds and claimed that the court order applied to his father, rather than to him. In that letter, Grasso stated: "Sometime back, my father became involved in a governmental litigation problem. The government 'froze' all his assets . . . ." PSR ¶ 83. In contrast, the obstructive conduct for which Grasso was convicted in No. 01-783 was related to Grasso's attempt to secure frozen funds in October 2001. That conduct consisted of sending fraudulent court orders and misleading correspondence to financial institutions. Therefore, it is clear that Grasso engaged in obstructive conduct in two separate instances. As such, the enhancement was properly applied and does not amount to double counting.

**D.**

Finally, Grasso argues that under 18 U.S.C. § 1956(a)(1)(A)(i) the term "proceeds" should be defined as net profits rather than gross receipts. In support of this argument he

13

relies on the Seventh Circuit's decision in <u>United States v. Scialabba</u>, 282 F.3d 475 (7th Cir. 2002). We held otherwise in Grasso's first appeal. <u>See</u> <u>Grasso</u>, 381 F.3d at 169. Grasso concedes that point and only seeks to preserve the issue for possible review in the Supreme Court. We will not, of course, relitigate the issue.

## III.

For the reasons stated herein the judgments of conviction and sentence entered in Nos. 00-51 and 01-783 will be affirmed.