**UNITED STATES of America,**

v.

**Frank IACABONI, Defendant.**

**No. 01–CR–30025–MAP.**

United States District Court,
D. Massachusetts.

Jan. 8, 2009.

---

Kristina E. Barclay, U.S. Attorney's Office, Boston, MA, for Plaintiff.

MEMORANDUM AND ORDER REGARDING DEFENDANT'S PETITIONS FOR WRIT OF ERROR CORAM NOBIS AND/OR AUDITA QUERELA (Dkt. Nos. 142 & 151)

PONSOR, District Judge.

## I. *INTRODUCTION*

On March 26, 2002, Defendant pled guilty to various gambling-related charges, including a money laundering conspiracy in violation of 18 U.S.C. § 1956 and a violation of the gambling statute, 18 U.S.C. § 1955(d). The Government sought forfeiture under the money laundering statute but not the gambling charge. *United States v. Iacaboni*, 221 F.Supp.2d 104, 110–11 (D.Mass.2002) ["*Iacaboni I*"] (aff'd in part and rev'd in part by *United States*

*v. Iacaboni,* 363 F.3d 1 (1st Cir.2004) [*"Iacaboni II"*]).

Following the guilty pleas, this court conducted a bench trial to determine the amount of money subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1) based on its involvement in the money laundering scheme. At that trial, Defendant's counsel argued that the term "proceeds" in 18 U.S.C. § 1956 referred only to the "net profits" of the gambling operation rather than the "total revenue" generated. In support of this contention he cited a decision from the Seventh Circuit, *United States v. Scialabba,* 282 F.3d 475 (7th Cir. 2002). This court rejected that argument, ruling that transactions involving any part of the "total revenue" of the gambling operation constituted money laundering and were therefore subject to forfeiture. *Iacaboni I,* at 112 n. 2. Defendant appealed the forfeiture award, though not his underlying money laundering conviction.

The First Circuit agreed with this court's construction of the term "proceeds" and affirmed the forfeiture award as to the amounts used to promote the gambling business. The Court of Appeals reversed this court's finding, however, as to those amounts that constituted money laundering under the "concealment" theory on the ground that Petitioner had only pled guilty to "promotional" money laundering. *Iacaboni II* at 7.

Guided by the First Circuit's opinion, this court on remand entered a forfeiture judgment in the amount of $376,750. (Dkt. No. 123, Order of Forfeiture 3.)

Since Defendant lacked the funds to satisfy the judgment immediately, the government at first proposed to seize and sell Defendant's residence. After negotiations, however, the government agreed to accept a single cash payment of $210,000 from Defendant followed by monthly payments of $2,000 for eighty-three months to satisfy the forfeiture judgment. (*Id.* at 4; Dkt. No. 126, Release of *Lis Pendens.*) The lump sum payment was turned over as agreed, and Defendant has since then scrupulously made his monthly payments.

This past summer, the Supreme Court declined to adopt the mode of analysis employed by this court and the First Circuit in construing the term "proceeds" in the money laundering statute and instead approved the Seventh Circuit's *Scialabba* approach, as counsel had urged during the original forfeiture proceeding. The Court held that the term "proceeds" as used in the governing statute referred to the "profits" not the gross "receipts" of an illegal lottery. *United States v. Santos,* — U.S. ——, 128 S.Ct. 2020, 2024–25, 170 L.Ed.2d 912 (2008). Summoning up two rather arcane common law tools, *coram nobis* and *audita querela,* Defendant now challenges both the forfeiture award and his underlying money laundering conviction in light of *Santos.*[1]

## II. DISCUSSION

### A. *Plea Agreement Waiver.*

 Defendant's plea agreement contained a waiver of his right to bring a

---

1. In his initial petition Defendant only sought relief from the forfeiture order. (Dkt. No. 142, Def.'s Pet. for Writ of Error *Coram Nobis* and/or *Audita Querela.*) Shortly before the hearing, however, Defendant sought to amend his petition to include a challenge to the underlying money laundering conviction. (Dkt. No. 151, Def.'s Amendment to Pet. for Writ of Error *Coram Nobis* and/or *Audita Querela.)*

Permission to amend was granted, and the government received an opportunity to provide supplemental briefing, to which Defendant has since replied. (Dkt. No. 153, Op. to Def.'s Amendment to Pet. for Writ of Error *Coram Nobis* and/or *Audita Querela* and Resp. to Def.'s Reply Br.; Dkt. No. 155, Def.'s Reply to Gov't's Op. to Am. Pet.)

collateral attack, such as the one he pursues now, upon either his conviction or his sentence. (Dkt. No. 49, Plea Agreement 5–6.) Defendant does not, in general, dispute the validity of the waiver provision,[2] but argues that the challenge now before the court lies outside its scope. The waiver included an exception allowing Defendant to bring "appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of [the] Agreement which are *held* by the First Circuit or Supreme Court to have retroactive effect." (Dkt. No. 49, Plea Agreement 6.) (Emphasis supplied.)

The hitch in Defendant's argument, which the supplied emphasis in the quote above highlights, is that neither the First Circuit nor the Supreme Court has held that the *Santos* decision has retroactive effect.

Defendant argues that the waiver exception applies to his collateral challenge because *Santos should* apply retroactively under applicable authority. He contends that the case created a new substantive rule and points out that "[n]ew substantive rules generally apply retroactively ... because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro v. Summerlin,* 542 U.S. 348, 351–52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

Regarding the retroactivity of *Santos,* Defendant's counsel has offered an intriguing and forceful argument, one with which the government disagrees. For purposes of the issue now before it, however, this court need not determine which side has made the stronger case. It is beyond dispute that the waiver exception set forth in the plea agreement only applies if either the First Circuit or the Supreme Court has *held* that *Santos* applies retroactively.

Neither has done so, and the early reviews on this issue are unhelpful or mixed. *See United States v. Levesque,* 546 F.3d 78, 82–83 (1st Cir.2008) (remanding, without mentioning retroactivity, a question raised on direct appeal regarding the applicability of *Santos* to the construction of another statute); *United States v. Godin,* 534 F.3d 51, 60 (1st Cir.2008) (citing *Santos* only for its articulation of the lenity rule); *United States v. Pryce,* No. CV 08–4456 PA, 2008 WL 4861294, at *1, 2008 U.S. Dist. LEXIS 94310, at *3 (C.D.Cal. Nov. 6, 2008)("The United States Supreme Court has not held that *Santos* applies retroactively on collateral review."); *Vaughan v. United States,* No. 08CV330–T–02, 2008 WL 2945449 at *3, 2008 U.S. Dist. LEXIS 60863 at *8 (W.D.N.C. July 25, 2008) (stating "the Supreme Court did not rule that its holding [in *Santos* ] could be retroactively applied in collateral proceedings or otherwise.").

By conditioning the waiver exception on the existence of an explicit holding, the parties agreed that Defendant would not be able to challenge his conviction or the

2. A defendant's waiver of the right to appeal and/or collaterally challenge his or her conviction or sentence is valid if (1) it is in writing and contains a " 'clear statement elucidating the waiver and delineating its scope;' " (2) has been sufficiently discussed during the plea hearing "to ensure that the defendant freely and intelligently agreed" to the waiver; and (3) does not "otherwise constitute [ ] a 'miscarriage of justice.' " *United States v. Ciampi,* 419 F.3d 20, 25 (1st Cir. 2005) (quoting *United States v. Teeter,* 257 F.3d 14, 24–25 (1st Cir.2001)). In this case the waiver was detailed in the written plea agreement, discussed at the plea hearing, and lacks any features that might raise concerns about a miscarriage of justice. (Dkt. No. 49, Plea Agreement 5–6; Dkt. No. 147, Ex. A, Tr. of March 26, 2002 Plea Hr'g 31.)

forfeiture award collaterally unless the First Circuit or Supreme Court had clearly answered the retroactivity question. Put differently, Defendant's case could not be the first one to argue for the retroactive applicability of the principle set forth in *Santos*. The wording of the exception shows a careful balance between Defendant's interest in being able to benefit from later changes to the law and the prosecution's desire to conserve resources. The absence of any clear retroactivity holding effectively ends the discussion.

It must be acknowledged that on the surface this reasoning has a hyper-technical quality. Defendant is left, it would seem, unfairly burdened by a forfeiture obligation that appears to be contrary to the direction the law has taken since the obligation was imposed on him. The answer to this, and the reality that binds this court, is that the plea agreement as a whole contained costs and benefits for both Defendant and the government. One of the costs to the Defendant, clearly spelled out to him, was the surrender of his right to bring a collateral challenge such as this one, except in very limited, explicitly defined circumstances that do not pertain here. The option to waive rights of appeal or collateral attack may be one of the few chips a criminal defendant has in negotiating a sensible, humane agreement with the government. To have some value, and thereby prompt a significant concession from the government, a defendant's waiver must be fairly enforceable, even (or especially) when the law happens to unfold later in a favorable direction. *See United States v. Teeter*, 257 F.3d 14, 23 (1st Cir. 2001) (discussing the benefits to defendants, the government, and the judicial system of allowing pre-sentence waivers of appellate rights and noting that "the more options that both sides have, the more likely it is that they will reach an accord").

The plain words of the exception must be enforced here. As the language of the waiver exception requires a prior holding as to retroactivity and as the Defendant is unable to point to (or the court discover) such a holding regarding *Santos*, the court must conclude that his collateral challenge to the forfeiture award and his conviction are barred by the waiver provision.

## B. *The Writs.*

Even if the court were to conclude that Defendant's current collateral challenge fell within the exception to the plea agreement's waiver provisions, it is very unlikely the seldom-used common law devices his counsel has artfully invoked could provide him the relief he requests.

### 1. *Writ of Error Coram Nobis.*

As the First Circuit has noted, *coram nobis*, the more common of the two writs Plaintiff seeks, was historically available only to correct a court's factual errors. *Trenkler v. United States*, 536 F.3d 85, 93 (1st Cir.2008). Defendant in this proceeding can only contend that the court made a legal error, not a factual one. Though it left the door open to the possibility that *coram nobis* might perhaps provide relief from legal errors, the First Circuit has not actually held that such relief is available. *Id.* at 94; *United States v. Sawyer*, 239 F.3d 31, 38 (1st Cir.2001)("We assume, without deciding, that a writ of *coram nobis* is available to vacate a criminal conviction premised upon a fundamental error of law.").

Even assuming that *coram nobis* relief might be available, in some cases, to remedy a purely legal error, the writ is not appropriate in the specific context of this case. The First Circuit has emphasized that a writ of *coram nobis* may be granted only when a defendant (1) offers a valid reason why the "petitioner did not earlier

seek relief from the judgment," (2) shows "that the petitioner continues to suffer significant collateral consequences from the judgment," and (3) demonstrates "that an error of 'the most fundamental character,' relevant to the [judgment], occurred." *Hager v. United States,* 993 F.2d 4, 5 (1st Cir.1993) (quoting *United States v. Morgan,* 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954)). Assuming that Defendant might clear the first hurdle, applicable authority suggests that he would be unlikely to satisfy the last two criteria.

■ As to the second factor, the weight of authority appears to hold that an ongoing financial requirement, such as Defendant's monthly payment obligation here, does not constitute a continuing "significant collateral consequence." *United States v. Sloan,* 505 F.3d 685, 697 (7th Cir.2007) (concluding that a garnishment order to pay an allegedly excessive amount of restitution did not create a continuing injury as required for a writ of error *coram nobis* ).

In addition, the argument that Defendant's payment obligation here constitutes a "significant collateral consequence" suffers from a unique infirmity within the factual framework of this case. As noted above, Defendant's payment plan was agreed to by the government as part of a *quid pro quo* arrangement to allow Defendant to retain his home. Had the government proceeded directly to seize and sell Defendant's home at the outset, as it might have, there would be no "continuing" consequence at this time at all. The government, moreover, gave up its claim to the house upon the assurance that it would, in time, receive the full amount of the forfeiture due at the time it entered into the compromise. It is unfair, when the government long ago released its legitimate claim to the house, to deprive it of the benefit of its bargain.

■ Finally, Defendant has failed to satisfy the third criterion required for *coram nobis* relief: showing an error that is fundamental to the validity of the judgment being challenged. The Seventh and Eleventh Circuits have both held that neither alleged errors in restitution orders nor criminal fines are fundamental to the underlying convictions. *Sloan,* 505 F.3d at 697 (ruling that allegedly excessive forfeiture award "is not of the 'most fundamental character' or one that amounts to a miscarriage of justice"); *United States v. Keane,* 852 F.2d 199, 204 (7th Cir.1988) (holding that a criminal fine is not sufficiently different from a civil judgment to, on its own, warrant *coram nobis* relief); *Lowery v. United States,* 956 F.2d 227, 229 (11th Cir.1992)(holding that an alleged sentencing error was not "fundamental" to the validity of the underlying conviction). Recently, in the District of Massachusetts, Judge George O'Toole concluded that "neither (a) a factual error as to the amount of restitution nor (b) a legal error in the manner of determining restitution is generally so 'fundamental' ... as to qualify for the writ." *Maguire v. United States,* No. 05–12508–GAO, 2008 WL 3523175, *1 n. 1, 2008 U.S. Dist. LEXIS 61084, *1 n. 1 (D.Mass. Aug. 12, 2008) (citing *United States v. Morgan,* 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954) and *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129 (1914)). No sensible basis exists to reach a different conclusion in the case of a forfeiture award.

2. *Writ of Error Audita Querela.*

The general availability of a writ of error *audita querela* is unclear. The writ has been abolished in the civil context, and the First Circuit has declined explicitly to affirm its availability in the criminal context. *United States v. Holder,* 936 F.2d 1, 2 (1st Cir.1991). Though the criteria to be

satisfied in order to invoke this common law tool are not well established, it seems they would be at least as stringent as those identified for a writ of error *coram nobis*. As Defendant probably cannot satisfy at least two of those requirements, it seems very unlikely that a writ of *audita querela* would provide an easier path for Defendant.

## III. *CONCLUSION.*

One of the painful realities of any system of justice is that law, like everything on this earth, changes. It happens that individuals suffer punishments that are harsher or more lenient at one time versus another, as the rules, and the courts' interpretations of them, evolve. Sometimes the attempt to change the rules is improper, as occurred in this case when the government attempted, contrary to this court's sentence, to place Defendant in a prison rather than a community corrections facility; in that instance, the court was able to shield Defendant from the government's overreaching. *See Iacaboni v. U.S.*, 251 F.Supp.2d 1015 (D.Mass.2003).

The situation is different here. The unavoidable fact is that Defendant in his plea agreement agreed to waive his right to bring this sort of collateral attack upon his conviction and the related forfeiture order. The plea agreement's carefully defined exception to that waiver cannot be stretched to permit consideration of the challenge offered here. Even if the language of the exception could be so construed, which it cannot, the facts of this case almost certainly would not warrant the extraordinary relief these old writs can in limited circumstances sometimes, perhaps, provide. Despite counsel's vigorous and resourceful efforts, therefore, Defendant's Petition and Amended Petition for Writ of Error *Coram Nobis* and/or *Audita Querela* (Dkt.

Nos. 142 & 151) are hereby DENIED. This case may now be closed.

It is So Ordered.