IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2009

Charles R. Fulbruge III
Clerk

No. 07-10451

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

FORTINO COBAIN BUENO,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Fortino Cobain Bueno appeals his conviction on one count of conspiracy to commit promotional money laundering in violation of 18 U.S.C. § 1956(h). He challenges the sufficiency of the evidence on several grounds and further challenges the reasonableness of his sentence. Because we find no ground for reversal of either conviction or the sentence, we affirm the district court's judgment.

I.

On March 22, 2006, Investigator Billy Joe Sides stopped Bueno for speeding on Interstate 20 in Mitchell County, Texas. Circumstances led Sides to conclude that Bueno was involved in the "drug courier business," and when

Bueno allowed Sides to search his car, the officer discovered money wrapped in plastic bags and stored in hidden compartments. Bueno then told Sides he was driving the cash to California for $3,000.

Sides took Bueno and his car to a sheriff's substation. After a thorough search, Sides discovered more than $130,000 concealed throughout the car. He then conducted a videotaped interview that would be the government's primary evidence at trial. During the interview, Bueno said he traveled from California to a town near Fayetteville, North Carolina. Once there, he registered a car that he did not own using an address where he did not reside. He admitted that he knew he was working with drug traffickers. He said they picked him up when he arrived in North Carolina and gave him money to drive to California. He also admitted to other details of the transaction that the government would contend were typical of trafficking drug proceeds.[1]

At trial, Bueno claimed he was forced to drive the money across the country. He told the jury that when he learned his cargo consisted of drug money, he refused, agreeing only after threats to his life and his family's lives. At no point before had he made such a claim.

At the close of evidence, the district court instructed the jury on the elements of conspiracy to commit promotional money laundering. Regarding the requirement that the money be "proceeds" of an illegal activity, it instructed that that the term included "any . . . property that someone acquires or retains as a result of the commission of the underlying specified activity." The court also told the jury that if it believed that Bueno had been coerced, it should acquit him. Bueno did not object to the instructions, but he did object to the sufficiency of the evidence and moved for acquittal. The district court denied his motion, and the jury convicted him.

---

[1] Bueno argues that he does not understand English so the tape should be discounted. He contradicted much of his videotaped statement at trial.

The court received a presentence report ("PSR") that recommended a sentence of between 87 and 108 months. It contained various enhancements and detailed their basis. Bueno did not object to the PSR, and the judge sentenced him to ninety-four months after hearing argument. Bueno now appeals his conviction and his sentence.

## II.

## A.

Bueno presents three arguments that the evidence was insufficient to convict him of conspiracy to commit promotional money laundering. We disagree with each.

## 1.

Bueno first argues that *United States v. Santos*, 128 S.Ct. 2020 (2008), requires the government to show that the money he transported constituted profits from illegal drug activity. He makes this argument for the first time on appeal, so we review the court's ruling on the sufficiency of the evidence for plain error.[2] *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005). We can reverse for plain error only when the trial court (1) commits an error (2) that was plain and (3) affects the defendant's substantial rights. *Id*. If we find those three factors, we will reverse only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 358-59 (quotations omitted).

*Santos* decided that 18 U.S.C. § 1956(a)(1), which bans laundering the "proceeds" of an unlawful activity, requires the government to show that the laundered money is profit, not simply receipts. 128 S.Ct. at 2025. But *Santos*

---

[2] Bueno argues that we should review the instructions *de novo*, because the government agreed *de novo* review was appropriate in its brief. We reject this argument. "The parties' failure to brief and argue properly the appropriate standard [of review] may lead the court to choose the wrong standard. But no party can *control* our standard of review." *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc) (emphasis in original).

addressed an illegal lottery operation. *Id.* at 2022. This case involves a conspiracy to launder proceeds of an illegal narcotics operation, a distinction that makes a difference. *Santos* was a splintered decision, with a four-justice plurality headed by Scalia applying the rule of lenity to require showing laundered profits for any violation of § 1956(a)(1). Justice Stevens, whose vote provided the majority, agreed with the plurality's reading concerning gambling operations, but he thought that "proceeds" included all receipts of drug operations. *Id.* at 2032 (Stevens, J., concurring).

In any event, it is not for this panel to decide whether the district court committed plain error by failing to require the government to prove the money Bueno transported was profits. In *United States v. Fernandez*, the court faced exactly the same issue: whether the district court committed plain error when it did not require the government to show drug profits, as opposed to receipts, in its case alleging promotional money laundering and conspiracy to do the same. 593 F.3d 303, 315-16 (5th Cir. 2009). After examining the *Santos* opinions, the court concluded, "While Justice Stevens and the plurality disagreed over the precise precedential effect of his statement, the uncertainty renders any error here not 'plain.' " *Id.* at 316.[3] We must reach the same decision here.

2.

Next, Bueno argues that the evidence of his intent to promote drug trafficking was insufficient. We inquire whether a "reasonable trier of fact could conclude that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and

---

[3] Judge DeMoss suggests that the *Fernandez* court's subsequent consideration of what effect any error would have had on Fernandez's substantial rights indicates that the court may not have been convinced that there was no plain error. Assuming he is correct, the court at most offered an alternative holding, a conclusion compelled by its decision to start the substantial rights analysis with "Even *were* there error that was plain . . . ." *Id.* (emphasis added). "This circuit follows the rule that alternative holdings are binding precedent and not *obiter dicta.*" *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 464 (5th Cir. 1991).

drawing all reasonable inferences from the evidence to support the verdict." *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008) (quotations omitted). The government presented evidence that Bueno knew he was working with drug traffickers and that he falsely registered two cars that were not his, along with other evidence. This evidence was sufficient to support his conviction.

3.

Bueno finally objects that the jury had insufficient evidence that Bueno joined a conspiracy. A conviction for conspiracy to launder money in violation of 18 U.S.C. § 1956(h) requires proof that "(1) there was an agreement between two or more persons to launder money; (2) the defendant voluntarily agreed to join the conspiracy; and (3) one of the persons committed an overt act in furtherance of the conspiracy." *United States v. Armstrong*, 550 F.3d 382, 403 (5th Cir. 2008). Bueno essentially asks us to believe his story that he was coerced into driving the money instead of the government's version that he was a voluntary participant. Weighing the evidence is a job for the jury, not for us. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003).

B.

Bueno also argues that the district court failed to make adequate findings to support various sentencing enhancements. Because he raises this argument for the first time on appeal, we review for plain error. *Percel*, 553 F.3d at 909. The PSR detailed the enhancements and their basis, and the district court adopted the PSR without any objection from Bueno. Because "information in the [PSR] is presumed reliable and may be adopted by the district court without further inquiry," the district court did not need to make any further findings or conduct further investigation. *United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002).

III.

Accordingly, the judgment of the district court is

AFFIRMED.

DeMOSS, Circuit Judge, Specially Concurring:

In *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008), the Supreme Court held that in a prosecution for promotional money laundering under 18 U.S.C. § 1956(a)(1), the government must prove that the "proceeds" involved were the "profits" of unlawful activity. In this case, we must determine if Fortino Cobain Bueno is criminally liable under a one-count indictment for conspiracy to commit § 1956(a)(1), where he was apprehended while transporting over $130,000 of drug-derived funds cross-country, but there was no evidence that the cash was profits of a controlled-substances enterprise, nor evidence that Bueno knew the cash was profits. Our precedent and the plain-error rule oblige us to answer this question in the affirmative. For this reason, I concur in the panel's disposition of this appeal. However, I write separately to lodge my concern that our Circuit has misapplied Supreme Court precedent at arriving at this state of affairs. I think the better course would be to reverse and remand for a new trial to determine whether the money hidden in Bueno's car was profits, as opposed to gross receipts, of drug-related activities.

I.

Bueno is a gardener from California. Driving a Honda Accord cross-country, he was stopped for speeding in Mitchell County, Texas. He consented to a search of the car; this revealed bundles of cash hidden in the car's panels. During a videotaped interview with police, Bueno, who is illiterate and does not speak English well, waived his *Miranda* rights. He said he went to North Carolina to buy used cars, and while staying at a house in the town of Hope Mills, he was instructed to drive the Honda and hidden cash from North Carolina to California. Bueno was paid around $2000. He insisted that he did not want to drive the money to California, but feared that his family would be harmed if he did not. Bueno knew little about the men who gave him this task. However, he inferred that his cargo was "drug money." Bueno's statements to

7

law enforcement formed the bulk of the government's case against him. The government did not present additional evidence about the nature of the alleged drug trafficking operation, the origin of the cash, or Bueno's knowledge of whether the funds were gross receipts or profits.

The district court instructed the jury that, for purposes of § 1956(a)(1), "proceeds" means "property that someone acquires or retains as a result of the commission of the underlying specified unlawful activity."[1] Bueno did not object to this instruction, and the jury found him guilty. Bueno also filed a motion for acquittal under FED. R. CRIM. P. 29, on the basis that the evidence did not establish the essential elements of the offense. Bueno did not have the clairvoyance to argue in his Rule 29 motion that the government failed to prove the money was the profits of a drug operation, as opposed to gross receipts, because the *Santos* decision had not then been handed down. The court denied the motion, and Bueno appealed.

## II.

Bueno's strongest arguments arise under *Santos*, which was decided after Bueno's trial, but before briefing in this appeal.[2] Bueno argues that in light of *Santos*, the evidence presented against him at trial is insufficient to support a conviction for money laundering. Nevertheless, owing to Bueno's failure to anticipate and raise *Santos*-based arguments before the district court, we review only for plain error. FED. R. CRIM. P. 52(b); *Johnson v. United States*, 520 U.S. 461, 466 (1997); *United States v. Rios-Quintero*, 204 F.3d 214, 215 (5th Cir. 2000). Bueno must show (1) error, (2) that is plain, and (3) that affected his substantial rights. *Johnson*, 520 U.S. at 466-67. If these conditions are met, we may exercise our discretion to correct the error if it "seriously affect[s] the

---

[1] I can find no language in the money laundering statute from which this definition would have been drawn.

[2] I fully concur in the panel's reasoning regarding Bueno's other arguments.

fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467. To determine whether an error is plain, we examine the state of the law at the time of appeal. *See id.* at 468; *see also Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). This rule is particularly salient to Bueno's case, because *Santos* is a watershed change of law by the Supreme Court.

## A.

In *Santos*, the Supreme Court held that the term "proceeds" in 18 U.S.C. § 1956(a)(1) is ambiguous, because it can either mean gross receipts or profits. 128 S. Ct. at 2025. The Court invoked the rule of lenity and held that the more restrictive, defendant-friendly definition applies, *i.e.*, profits. *Id.* Consequently, the Court vacated petitioner Santos's conviction, which Santos had collaterally attacked via a habeas corpus petition under 28 U.S.C. § 2255. *Id.* at 2023.

While the Court's disposition is easily summarized, its vote was fractured, giving lower courts scant guidance for future applications. Justice Scalia, joined by Justices Souter, Thomas, and Ginsburg, believed that the government must prove in any promotional money laundering prosecution (1) that the defendant conducted a transaction with "profits," and (2) that the defendant knew the transaction involved profits of unlawful activity. *Id.* at 2029. Justice Scalia emphasized that the same statutory term must be given the same meaning in all cases; the definition of the term cannot bend according to the facts presented. *Id.* at 2030 (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005)).[3] Justice Stevens reasoned that the government need only prove the more prosecution-friendly "gross receipts" definition if legislative history showed congressional intent to

---

[3] Justice Thomas did not join the portion of the plurality opinion which discussed *stare decisis* and Justice Stevens's opinion.

cover such laundering activity, specifically in the controlled substances context. *Id.* at 2031-32 & n.3. Justice Alito, joined by Chief Justice Roberts and Justices Kennedy and Breyer, would have held that "proceeds" is unambiguous and means "gross receipts" for all prosecutions under § 1956(a)(1). *Id.* at 2036.

## B.

In the aftermath of *Santos*, this Court has struggled to define "proceeds" in money laundering prosecutions where the underlying unlawful conduct is a controlled substances offense. *See United States v. Fernandez*, 559 F.3d 303, 316-17 (5th Cir. 2009); *United States v. Brown*, 553 F.3d 768, 783-84 (5th Cir. 2008), *cert. denied sub nom. Combs v. United States*, 129 S. Ct. 2812 (2009), *sub nom. Brown v. United States*, --- S. Ct. ---, No. 09-5316 (Oct. 5, 2009).[4] The *Brown* panel reasoned that while Justice Stevens and the four dissenters might apply the "gross receipts" definition in the controlled substances context, it is also possible that one of the dissenting justices would join the *Santos* plurality so as to achieve a consistent definition of "proceeds" for all prosecutions under § 1956(a)(1). 553 F.3d at 784. In *Brown*, the panel did not need to decide which definition applies because the government presented "ample, unchallenged evidence" that the defendants' illicit sales of painkillers were profitable. *Id.* Moreover, "[m]uch of the profits from these sales was deposited into pharmacy bank accounts in cash, accounts from which the money used in the charged transactions was drawn." *Id.* As for erroneous jury instructions (which reflected the law pre-*Santos*), the *Brown* opinion further commented that the defendants'

---

[4] Congress has since amended the statute. Effective May 20, 2009, § 1956(c)(9) now reads: "the term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21, § 2(f)(1)(B), 123 Stat. 1617, 1618 (2009). The bill is silent on retroactivity; therefore, it only applies to conduct which occurs post-amendment. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

failure to object, coupled with the unsettled state of the law post-*Santos*, meant that the defendants could not meet the plain-error standard. *Id.* at 785.

In *Fernandez*, another panel of this Court took a similar view of the "plainness" of the error of failing to present evidence or give a jury instruction which conforms to the definition of "proceeds" under *Santos*:

> Justice Stevens's comment that gross revenues were the relevant proceeds applies to the sale of contraband and the operation of criminal organizations, precisely the type of offenses for which Fernandez was convicted. While Justice Stevens and the plurality disagreed over the precise precedential effect of his statement, the uncertainty renders any error here not "plain."

559 F.3d at 316. In other words, the Supreme Court gave an ambiguous interpretation to an ambiguous statute. Thus, *Fernandez* stands for that proposition that, while statutory ambiguity favors the accused per the rule of lenity, ambiguity in subsequent case law prevents the convicted from showing plain error. I find this nonsensical.

The panel in *Fernandez*, perhaps unconvinced that the error was not plain, also reasoned that Fernandez's substantial rights were unaffected. Fernandez was convicted of § 1956(a)(1)(B)(i) and (ii), "which prohibit transactions designed to 'conceal or disguise' the origins or location of the proceeds of illegal activity, or to avoid legal reporting requirements." *Id.* at 317. Like Bueno, Santos was convicted of § 1956(a)(1)(A)(i), which "prohibits conducting a financial transaction with the proceeds of illegal activity 'with the intent to promote the carrying on of' additional illegal activity." *Id.* at 316. Thus, Fernandez was convicted of a different subsection of the money laundering statute. Moreover, the government presented evidence that Fernandez used laundered funds to purchase assets unrelated to the controlled substances activity in "a string of

11

transactions over a period of fifteen years involving real estate, horses, and multiple shell corporations." *Id.* at 317. *A fortiori*, such funds were inferentially profits of the drug trafficking conspiracy.

C.

I disagree with the narrow reading our Court has given *Santos* in the controlled substances context in *Brown* and *Fernandez*. I also believe that this case is factually distinguishable from *Brown* and *Fernandez*, and that under my reading of *Santos*, Bueno can show plain error. I recognize that, arguably, *Brown* and *Fernandez* can be interpreted to control our decision in this case. Nevertheless, I will explain my reasoning herein.

In my mind, *Santos* brought about a substantial change in the meaning of the federal money laundering statute. It seems to me that *Santos* stands for the proposition that the term "proceeds" in § 1956 is ambiguous. Therefore, our interpretation must be guided by the rule of lenity in all money laundering prosecutions. As Justice Scalia said, *Santos* did not settle the *stare decisis* question one way or another. *Id.* at 2031 ("'[P]roceeds' means 'profits' when there is no legislative history to the contrary. That is all that our judgment holds. It does not hold that the outcome is different when contrary legislative history does exist."). I do not see it fit to count Supreme Court votes in a theoretical money laundering case where the underlying offense is a controlled substances violation. In light of the uncertainty reigning post-*Santos*, I would grant Bueno the benefit of a very considerable doubt, and hold that the rule of lenity obliges us to define "proceeds" as "profits" in this case. There is evidence that the cash was drug money—Bueno's statements and admissions establish this beyond peradventure. However, there is no evidence whatsoever that the money was profits, nor that Bueno, a low-level bagman, knew that the money represented drug-trafficking profits. Bueno was apparently kept in the dark about the nature of the organization he served and the funds he delivered; he was only told that

he was to drive over $130,000 from point A (North Carolina) to point B (California).

We judge error at the time of appeal. *See Johnson*, 520 U.S. at 468. Thus, I would hold that the district court erred in failing to instruct the jury that "proceeds" means "profits," as opposed to property derived from criminal activity (i.e., gross receipts). Given the absence of evidence of profits, or Bueno's knowledge thereof, the court likewise erred in failing to grant Bueno's motion for judgment of acquittal. The difference between "profits" and "gross receipts" is obvious; these errors were plain. I recognize that this conclusion arguably conflicts with *Brown* and *Fernandez*. *See* 553 F.3d at 785; 559 F.3d at 316. Our rule of orderliness prevents this panel from overruling a prior decision; therefore, I reluctantly concur in the panel's result. *See United States v. Dial*, 542 F.3d 1059, 1060 (5th Cir. 2008).

In my view, the error affected Bueno's substantial rights. As discussed above, there is simply no evidence that the money in Bueno's car was profits, as opposed to gross receipts. This sets this case apart factually from either *Brown* or *Fernandez*; in both of those cases, the government presented extensive evidence of the profitability of the respective controlled-substances activities. Finally, I believe that we should exercise our discretion to correct the error, because it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *See Johnson*, 520 U.S. at 467. It bears emphasizing that the gulf between the elements of § 1956(a)(1) and the proof adduced at trial is vast. Moreover, the Supreme Court saw it fit in *Santos* to vacate on collateral review a conviction which had been final for nearly a decade. *See* 128 S. Ct. at 2023.[5] It stands to reason that if the Supreme Court saw it fit to apply the rule

---

[5] Santos's conviction was affirmed on direct appeal to the Seventh Circuit; the Supreme Court then denied his petition for a writ of certiorari. A subsequent Seventh Circuit decision held that "proceeds" under § 1956 actually means "profits." *See United States v. Scialabba*, 282

of lenity and to vacate Santos's long-final conviction, we should not hesitate to grant relief on direct appeal. If I could, I would vacate the conviction and remand to the district court for retrial.

---

F.3d 475, 477-78 (7th Cir. 2002). *Scialabba* was a money laundering conviction where the underlying offense was running an unlawful gambling business, but its reasoning applies to drug-related activities as well: "Likewise, one would suppose, the 'proceeds' of drug dealing are the profits of that activity (the sums available for investment outside drug markets), the net yield rather than the gross receipts that must be used to buy inventory and pay the wages of couriers." *Id.* at 477. Santos sought to set aside his conviction via a writ of habeas corpus under 28 U.S.C. § 2255. The district court granted relief and the Seventh Circuit affirmed, as did the Supreme Court. *See* 128 S. Ct. at 2023.